UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SHERMAN WASHINGTON,

        Petitioner,                Case No. 1:14-cv-1009

v.                                    Honorable Robert J. Jonker

CARMEN D. PALMER,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Sherman Washington is presently incarcerated with the Michigan Department of Corrections at the Gus Harrison Correctional Facility in Adrian, Michigan. Petitioner is serving a sentence of 20 to 40 years imposed by the Ingham County Circuit Court on June 6, 2012, after a jury convicted Petitioner of one count of first-degree home invasion, MICH. COMP. LAWS § 750.110a(2). In his *pro se* petition, Petitioner raises four grounds for relief, as follows:

    I.    Other Bad Acts Evidence/Ineffective Assistance of Counsel. Sixth and Fourteenth Amendment violations.

    II.    Unauthenticated Evidence (Irrelevant Evidence)/Ineffective Assistance of Counsel, Sixth and Fourteenth Amendment violations.

    III.    Cumulative Errors. Sixth and Fourteenth Amendment violations.

    IV.    Introduction of Irrelevant and Highly Prejudicial Evidence Implying Defendant had a Criminal Past. Counsel was ineffective in Failing to Object.

(Pet., ECF No.1, PageID.6-10.) Respondent has filed an answer to the petition (ECF No. 22) stating that the grounds should be denied because they have been procedurally defaulted or because

they lack merit. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit. Accordingly, I recommend that the petition be denied.

## Discussion

I. Factual allegations

In the early morning hours of May 7, 2011, Ms. Debra Cook was asleep in an upstairs bedroom at her home, 217 North Hayford, Lansing, Michigan. (Trial II Tr. I, ECF No. 23-9, PageID.489-490.)[1] She was startled awake at about 1:00 a.m. by the sound of footsteps in the house. (*Id*.) She was alone in the home; both of her daughters were away at college. (*Id*.) She opened her bedroom door to investigate and saw Petitioner in her daughter's bedroom across the hall, rifling through the bottom drawer of her dresser. (*Id*.) Ms. Cook directed Petitioner to leave. (*Id*., PageID.491.) He asked "Is Chelsea here?" (*Id*.) Ms. Cook told Petitioner there was no Chelsea at that home and again directed him out of the house. (*Id*.) Ms. Cook noted that Petitioner held her sunglasses, which she had left in her unlocked car. (*Id*., PageID.491-492.) He returned the sunglasses. (*Id*.) He also had a bottle of flavored vodka. (*Id*., PageID.492.) Petitioner left. (*Id*.) Ms. Cook went back into her bedroom, locked the door, and called the police. (*Id*.)

---

[1] The Rule 5 materials include several transcripts of the trial court proceedings. The transcripts shall be referenced as follows:

| | |
|---|---|
| June 9, 2011 Preliminary Exam. Transcript | Prelim. Tr. |
| June 22, 2011 Arraignment Transcript | Arraignment I Tr. |
| June 29, 2011 Arraignment Transcript | Arraignment II Tr. |
| October 19, 2011 Motion Hearing Transcript | Mot. Tr. I |
| May 7, 2012 Trial Transcript (Volume 1) | Trial I Tr. I |
| May 8, 2012 Trial Transcript (Volume 2) | Trial I Tr. II |
| May 14, 2012 Trial Transcript (Volume 1) | Trial II Tr. I |
| May 15, 2012 Trial Transcript (Volume 2) | Trial II Tr. II |
| May 17, 2012 Trial Transcript (Volume 3) | Trial II Tr. III |
| June 6, 2012 Sentencing Transcript | Sentencing Tr. |

The police arrived shortly thereafter. They made sure the house was clear. Ms. Cook discovered the bottle of flavored vodka and a few bottles of beer were missing from her refrigerator.

About an hour later, Ms. Erika Stasl was returning from work to her home just a few blocks away from Ms. Cook's home. (Trial II Tr. II, ECF No. 23-10, PageID.501.) She saw a man, Petitioner, attempting to open her roommate's car. (*Id*.) The car was locked, so the man moved on to the neighbor's house. (*Id*.) He tried to open the doors of the three vehicles in the driveway there as well. (*Id*.) The third vehicle was unlocked. (*Id*.) The man leaned in to the car. (*Id*.) Ms. Stasl's roommate approached the man. (*Id*., PageID.501-502.) He closed the car door and then proceeded to try the doors of other vehicles parked on the street. (*Id*.) Ms. Stasl called the police. (*Id*.) The man had moved on down the street when the police arrived. (*Id*.)

The police arrested Petitioner. (*Id*., PageID.511.)

The trial that resulted in Petitioner's conviction was not Petitioner's first trial on the charge of invading Ms. Cook's home. At the initial trial, Petitioner represented himself with the assistance of standby counsel. He made it through the jury pick, but during Petitioner's opening, he twice raised issues that were not appropriate for presentation to the jury. (Trial I Tr. II, ECF No. 23-7, PageID.434, 440.) The trial judge declared a mistrial. (*Id*., PageID.441.) The court appointed Petitioner's standby counsel as trial counsel and a second trial, with a new jury, was conducted the next week.

The first trial never proceeded far enough for the introduction of testimony. Nonetheless, Petitioner's opening statement shed some light on his planned defense. Petitioner claimed that he was hoping to attend a graduation party hosted by "Chelsea." (Trial I Tr. II, ECF No. 23-7, PageID.437.) He believed that the home he entered was the location of the party. He

3

knocked at the back door. (*Id.*) When there was no answer, he went inside through the open door, closed it behind him, and began his search for Chelsea. (*Id.*) When there were no lights on and no people downstairs, he proceeded upstairs. (*Id.*) He looked into the two open bedrooms and then went into the one he thought was Chelsea's. (*Id.*, PageID.438.) In that room, he tripped on a pair of sunglasses; that is why he was holding the sunglasses when Ms. Cook confronted him. (*Id.*) Petitioner denied that he was holding a vodka bottle or that he took vodka or beer from the refrigerator. (*Id.*)

Petitioner never had the opportunity to explain why he was going through parked cars. Shortly after describing the event at Ms. Cook's house, Petitioner told the jury the maximum penalty for home invasion and, based on that comment, the court declared a mistrial. (*Id.*, PageID.440.)

At the second trial, in opening argument, Petitioner's counsel told the jury the version of events that he expected Petitioner would provide on the stand, a version that was essentially the same as that offered by Petitioner in his opening argument from the first trial. (Trial II Tr. 1, ECF No. 23-9, PageID.488-489.) After the prosecutor completed his proofs, however, Petitioner decided not to testify. Thus, the only version of the events in evidence for the jury was that provided by Ms. Cook. The jury reached its verdict after about an hour of deliberation. (Trial II Tr. III, ECF No. 23-11, PageID.532.)

Petitioner, with the assistance of appointed counsel, appealed his conviction and sentence to the Michigan Court of Appeals, raising seven issues, including his four habeas issues. By unpublished opinion entered May 28, 2013, the Michigan Court of Appeals affirmed Petitioner's conviction and sentence. (Mich. Ct. App. Op., ECF No. 23-14, PageID.589-600.)

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising the same issues he had raised in the court of appeals. The Michigan Supreme Court denied leave by order entered October 28, 2013. (Mich. Ord., ECF No. 23-25, PageID.779.)

On August 5, 2014, Petitioner filed his first habeas petition raising the same issues he had raised in the state appellate courts as well as a new prosecutorial misconduct challenge. *Washington v. Bauman*, No. 2:14-cv-167 (W.D. Mich.). The Court dismissed the petition to permit Petitioner to return to the state courts to exhaust the prosecutorial misconduct issue. (2:14-cv-167, Op., ECF No. 6.) Instead, Petitioner streamlined his petition down to four issues and commenced this action.

## II.     AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and

not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981).

### A. Evidentiary rulings

Petitioner claims that the trial court improperly permitted the introduction of evidence that was irrelevant and highly prejudicial to his defense. Petitioner contends that this evidence considered individually or cumulatively rendered his trial fundamentally unfair.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id*. at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme

7

Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  Petitioner has not met this difficult standard with respect to any of the categories of prejudicial evidence.

### 1. Evidence of Petitioner's subsequent acts

Petitioner first complains that the prosecutor should not have been permitted to introduce evidence that Petitioner was going through vehicles, presumably with larcenous intent, an hour after the incident at Ms. Cook's home.  The Michigan Court of Appeals rejected Petitioner's complaint because, although the evidence was certainly "propensity evidence,"[2] it was admissible under the Michigan Rules of Evidence because it was introduced to show "'motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident[.]'"  (Mich. Ct. App. Op., ECF No. 23-14, PageID.593 (quoting MICH. R. EVID. 404).)  The court concluded that the "propensity evidence" regarding Petitioner was extremely probative to demonstrate the material issue of Petitioner's intent, i.e. that Petitioner was "out that night committing crimes of opportunity and was not out to attend a party." (*Id*., PageID.594.)  The court also concluded that the evidence was not unfairly prejudicial.  (*Id*., PageID.594-595.)

Although the Michigan Court of Appeals relied on state law, and not federal constitutional analysis, to resolve Petitioner's challenge, the court's determination that introduction of the evidence was permitted is not contrary to clearly established federal law.  Indeed, there is no clearly established Supreme Court precedent that holds that a state court violates

---

[2] The Michigan Rules of Evidence describe propensity evidence as "Evidence of other crimes, wrongs or acts [introduced} to prove the character of a person in order to show action in conformity therewith."  MICH. R. EVID. 404(b)(1).

8

the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Moreover, the court of appeals' factual determinations regarding the nature, import, and prejudicial character of the propensity evidence are supported by the record. To overcome the presumption of correctness accorded those findings on habeas review, Petitioner must present clear and convincing evidence to the contrary. Instead, Petitioner challenges the state court's findings by noting that "cars and houses are different . . . [y]ou can't enter a car to attend a party" and that his intent in entering the cars might have been to "vandalize the car's interior, get a light from the console, or sleep in the car . . .[,]" therefore the other bad acts may not evidence larcenous intent. (Pet'r's Br., ECF No. 2, PageID.40-41.) Petitioner's comments do not rise to the level of clear and convincing evidence. In addition, even if Petitioner presented clear and convincing evidence to overcome the presumption of correctness, it would only call into question the state court's conclusions on the state law issue of admissibility under the Michigan Rules of Evidence. It would not be sufficient to overcome the absence of clearly established federal law that holds propensity

9

evidence runs afoul of the constitutional protections of due process. Accordingly, Petitioner has failed to demonstrate that he is entitled to habeas relief based on the introduction of propensity evidence to support his conviction.

2. The photograph of the beer bottles

Ms. Cook testified that "three or four beers" were missing from her refrigerator. (Trial II, Tr. I, ECF No. 23-9, PageID.492.) Ms. Cook also testified that a few months later she was cleaning her backyard and she discovered beer bottles next to her garage. (*Id*., PageID.493.) Ms. Cook believed it was the beer that was taken from her refrigerator. (*Id*., PageID.495.) Ms. Cook took a picture of the bottles; the picture was introduced into evidence at Petitioner's trial. (*Id*., PageID.493.) Petitioner called Ms. Cook back to the stand as part of Petitioner's proofs. (Trial II Tr. II, ECF No. 23-10, PageID.515.) Petitioner introduced a different picture that Ms. Cook had taken of the beer bottles that also showed a beer can. (*Id*., PageID.515-516.)

Petitioner's argument with regard to the beer bottle pictures is a little muddled. He contends that the admission of the pictures violates Federal Rule of Evidence 901(a) because they were not authenticated. Federal Rule of Evidence 901(a) has no application in a trial in the Ingham County Circuit Court. Nonetheless, the parallel Michigan Rule of Evidence does apply. It is worded differently, but it is identical in purpose: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." MICH. R. EVID. 901(a). The Michigan Court of Appeals did not address the authentication aspect of Petitioner's argument. The trial court record, however, reveals that Ms. Cook identified and authenticated both photographs. Although the state law issue of compliance with the Michigan Rule of Evidence 901(a) is

immaterial on habeas review, *Estelle*, 502 U.S. at 67-68, it is beyond dispute that the trial court complied with the requirements of Rule 901(a) with respect to the beer bottle photographs.

The heart of Petitioner's argument is not that Ms. Cook failed to identify and authenticate the photographs she took, but that the prosecutor failed to demonstrate that the bottles in the photograph were the bottles allegedly taken from Ms. Cook's refrigerator or that Petitioner has any connection to the bottles. (Pet'r's Br., ECF No. 2, PageID.50-55.) Essentially, Petitioner argues that the photographs of the beer bottles were not relevant. That is the argument addressed by the Michigan Court of Appeals:

> [D]efendant maintains that the photograph of beer bottles in the victim's yard admitted to the jury was irrelevant and more prejudicial than probative because there was nothing to connect the beer bottles to the alleged crime. . . . [W]e conclude that the evidence regarding the beer bottles was properly admitted. The evidence was relevant because the victim testified that three or four beer bottles were missing after defendant left. MRE 401. Defendant argues that the bottles were not connected to the offense because the victim did not find them in her backyard until a few months later, but the lapse in time affects only the credibility of the victim's testimony, not the relevance of the evidence. Moreover, it is the jury's responsibility to determine the weight of evidence and the credibility of testimony. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Accordingly, defendant has not demonstrated plain error in regard to the admission of the testimony regarding the beer bottles or the photograph.

(Mich. Ct. App. Op., ECF No. 23-14, PageID.595.)

As noted above, under the AEDPA, the court may not grant relief simply because it would have decided an evidentiary question differently. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas

corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting Bradshaw, 546 U.S. at 76). Thus, this Court is bound by the Michigan Court of Appeals' determination that the pictures of the beer bottles are relevant under Michigan Rule of Evidence 401.

To prevail, Petitioner must demonstrate that the state court's admission of the evidence is in conflict with a decision reached by the Supreme Court on a question of law or that the state court admitted the evidence when the Supreme Court excluded it on a set of materially indistinguishable facts. *Sanders*, 221 F.3d 860. Petitioner has not identified any such Supreme Court authority. Indeed, he cannot. The Sixth Circuit has determined that "[t]he Supreme Court has never held (except *perhaps* within the capital sentencing context) that a state trial court's admission of relevant evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012). Petitioner is not entitled to habeas relief based on the admission of the beer bottle pictures.

### 3. The police database

When Petitioner was arrested he provided the police with a name other than his own. (Trial II Tr. II, ECF No. 23-10, PageID.511-512.) The police found a completed form in Petitioner's backpack that included the name "Sherman Lance Washington." (*Id*.) The police officer ran that name through the police department's in-house records management system that includes information regarding persons who have witnessed a crime, been accused of a crime, or been a victim of a crime. (*Id*.) That search turned up a picture so that the officer was able to confirm that Petitioner was Sherman Washington. (*Id*.)

Petitioner claims the reference to the police database was highly prejudicial because one of the three possible reasons for showing up in the database, being accused of a crime, cast him in a poor light. The Michigan Court of Appeals concluded the evidence was not prejudicial:

> We also conclude that the testimony that defendant's name was in a police database was proper. This evidence was relevant because the officer was testifying about how she determined defendant's real name. In so doing, she described the database as containing names of witnesses, victims, and those accused of any crime. She never testified or indicated that defendant had previously been accused of crimes, and there is no reason to believe the jury assumed defendant had a "nefarious past" because he was included in such a list in light of the fact that the list also included individuals who were victims and witnesses of crimes. Accordingly, the evidence was relevant and not prejudicial. MRE 401; MRE 403. Thus, there was no plain error.
>
> Similarly, the evidence that defendant used a false name and birthday when first questioned by police was properly admitted. This Court has held that a trial court may admit evidence that the defendant gave a false name to the police to show the defendant's consciousness of guilt. *People v Cutchall*, 200 Mich App 396, 399-401; 504 NW2d 666 (1993), overruled on other grounds, *People v Edgett*, 220 Mich App 686, 691-694; 560 NW2d 360 (1996). Accordingly, defendant has failed to demonstrate plain error.

(Mich. Ct. App. Op., ECF No. 23-14, PageID.596.)

Once again, the state court's conclusion that the evidence was admissible because it was relevant and more probative than prejudicial under the Michigan Rules of Evidence is binding on this Court. Moreover, the state court's factual determinations with regard to the character of the evidence as relevant, probative, and not prejudicial--determinations that are presumed correct--find ample support in the record. Petitioner has failed to rebut the presumption of correctness with any evidence, much less clear and convincing evidence. Petitioner has similarly failed to identify any United States Supreme Court authority with which the state appellate court's decision is in conflict. Accordingly, Petitioner has failed to establish entitlement to habeas relief with regard to the admission of the evidence regarding the availability of Petitioner's information in the police database.

4. Reference to a warrant

As part of his argument regarding the police database, Petitioner also complains that the arresting officer told the jury there was another warrant out for Petitioner's arrest. The relevant exchange reads as follows:

Prosecutor Q: Did you ask the defendant why he gave you a fake name?

Officer A: I don't remember if I asked him why he did but he did have –

Prosecutor Q: Okay. I don't want--you don't know why. You didn't ask him why?

Officer A: I didn't specifically ask him, no.

(Trial II Tr. II, ECF No. 23-10, PageID.513.) Petitioner claims that the words after "he did have" was "a warrant."[3] (Pet'r's Supp. Br., ECF No. 16, PageID.191.) Petitioner contends that testimony regarding some other warrant is the sort of propensity evidence that is barred by Michigan Rule of Evidence 404 when offered to show action in conformity with the prior bad act and that the introduction of such evidence rendered his trial unconstitutionally unfair. The Michigan Court of Appeals never addressed the argument as a matter of state law or federal constitutional law.

Even accepting that the witness testified as Petitioner reports, the jury heard it, and the introduction of the information regarding the warrant was not permissible under Rule 404 as, for example, proof of Petitioner's motive for providing a false name, Petitioner has failed to establish entitlement to habeas relief because the error was harmless. The inappropriate admission of propensity evidence is subject to harmless error analysis. *Cristini v. McKee*, 526 F.3d 888 (6th Cir. 2008); *Miljkovic v. Woods*, 517 F. App'x 392 (6th Cir. 2013). On habeas review, a court must assess harmlessness under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993),

---

[3] In Petitioner's supplemental filings, he indicates that he has provided proof of the missing words in Appendix C to his initial brief. Appendix C, however, is a single sheet of paper with the handwritten notation: "(PROOF OF WARRANT)." (App. C, ECF No. 2-4, PageID.75.)

14

regardless of whether the state appellate court recognized the error and reviewed it for harmlessness.  *See Hargrave v. McKee*, 248 F. App'x 718, 728 (6th Cir. 2007) (citing *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007)).  The *Brecht* standard requires the Court to consider whether the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result.  *Brecht*, 507 U.S. at 638.  In determining whether the restriction was harmless, a court must consider a number of factors, "'includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'"  *Hargrave*, 248 F. App'x at 728 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

Here, it is absurd to suggest that a fleeting reference to the possibility of a warrant for Petitioner's arrest, a reference so fleeting that even the court reporter did not catch it, swayed the jury to find Petitioner guilty of home invasion.  Ms. Cook provided unrebutted testimony that Petitioner entered her dark and quiet home at 1:00 a.m., proceeded through the first-floor, up the stairs, was discovered in her daughter's bedroom rifling through the bottom drawer of a dresser, was in possession of sunglasses that Ms. Cook had left in her automobile, was in possession of a vodka bottle that had been in Ms. Cook's refrigerator, and departed with the vodka.  There was sufficient information in Ms. Cook's testimony alone to support the inference that Petitioner entered Ms. Cook's home, without permission, while she was sleeping inside, and with larcenous intent.  Petitioner's subsequent entry into other parked cars bolstered the prosecutor's claim that Petitioner was simply rambling about committing crimes of opportunity.  In addition, Petitioner acknowledged that he entered Ms. Cook's home, traveled up the stairs, entered the daughter's bedroom, and was confronted by Ms. Cook.  Petitioner's proposed explanation for his behavior,

that he was searching for a party, was highly implausible. Against that backdrop, the passing reference to a warrant simply cannot be said to have had a substantial and injurious effect on the result. Any error resulting from the reference to the warrant was harmless.

### 5. Cumulative effect of evidentiary errors

Finally, Petitioner contends that even if the individual errors did not render his trial unfair, the errors considered together did so. With the possible exception of the fleeting reference to another warrant, however, there were no errors. Meritless individual claims of error cannot by accumulation create constitutional infirmity. *See Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004) ("[T]he accumulation of non-errors cannot collectively amount to a violation of due process.") (internal quotation omitted).

Moreover, under settled Sixth Circuit authority, a claim that the cumulative effect of errors rendered a trial fundamentally unfair is "not cognizable" after the AEDPA. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011). "The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002). Thus, it is impossible for Petitioner to demonstrate that the state court's rejection of his cumulative error claim is contrary to, or an unreasonable application of, clearly established federal law.

### B. Ineffective assistance of counsel

Petitioner contends that his counsel's failure to object to the prejudicial evidence identified above rendered counsel's assistance constitutionally ineffective. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. Petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's

deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. With respect to each of Petitioner's assertions of ineffective assistance, the Michigan Court of Appeals concluded that counsel was not ineffective because the proposed objections would have been futile and Petitioner had failed to demonstrate that the result of the proceedings would have been different if the objections had been made. (Mich. Ct. App. Op., ECF No. 23-14, PageID.595, 596.)

The state appellate court's determinations are entirely consistent with, and are reasonable applications of, *Strickland*. The objections Petitioner contends his counsel failed to make had no merit. As explained above, with the exception of the testimony regarding the warrant, the evidence was admissible under state law. Counsel's failure to raise a meritless issue does not constitute ineffective assistance of counsel. *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'"). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

Moreover, even if counsel's failure to object to the reference to the warrant was professionally unreasonable, Petitioner has failed to demonstrate the requisite prejudice. The determination that any error was harmless under *Brecht* necessarily means that it is not prejudicial under *Strickland*. *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976), materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless error test of *Brecht*); *see also Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016); *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) ("Because we find the error to be harmless

[under *Brecht*] Bell cannot meet the prejudice requirement of *Strickland* . . . ."); *Kelly v. McKee*, No. 16-1572, 2017 WL 2831019 at *8 (6th Cir. Jan. 24, 2017) ("Because Kelly suffered harmless error [under *Brecht*] at best, he cannot establish that he suffered prejudice [under *Strickland*].").

Petitioner has failed to establish that he is entitled to habeas relief based on the ineffective assistance of his trial counsel.

### Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken. 28 U.S.C. § 2253(c)(1). A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

**Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated:  October 10, 2017                          /s/ RAY KENT
                                                  United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).